UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

| | |
|---|---|
| KNIFE RIGHTS, INC.; RUSSELL ARNOLD; JEFFREY FOLLODER; RGA AUCTION SERVICES LLC d.b.a. FIREARM SOLUTIONS; AND MOD SPECIALTIES,<br><br>*Plaintiffs*,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE,<br><br>*Defendants*. | Civil Action No. 4:23-cv-547 |

## COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs Knife Rights Inc., Russell Arnold, Jeffery Folloder, RGA Auction Services LLC, d.b.a Firearm Solutions, and MOD Specialties, file this Complaint for Declaratory Judgment and Injunctive Relief against Defendants Merrick Garland, Attorney General of the United States and the United States Department of Justice and state the following:

# INTRODUCTION

1. In *District of Columbia v. Heller*, the Supreme Court made clear that "The 18th-century meaning [of the term "arms"] is no different from the meaning today." 554 U.S. 570, 581 (2008). That is to say, "arms" are "[w]eapons of offence, or armour of defence." *Id*. (quoting 1 Dictionary of the English Language 107 (4th ed.) (reprinted 1978)), and further defined the term to mean "'any thing that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike another.'" *Id*. (quoting 1 A New and Complete Law Dictionary (1771)).

2. There can be no question that knives are "arms" protected under the plain text of the Second Amendment. The "Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 142 S. Ct. 2111, 2132 (2021) (quoting *Heller*, 554 U.S. at 582). And indeed, the Supreme Court made clear in *Bruen* that the Second and Fourteenth Amendments protect the right to acquire, possess, and carry arms for self-defense and all other lawful purposes—inside *and* outside the home.

3. Despite Supreme Court precedent, the Federal Switchblade Act, 15 U.S.C. §§ 1241-1245, enacted in 1958 as Pub. Law 85-623, prohibits the introduction, manufacture for introduction, transportation, or distribution into interstate commerce of switchblade knives, as defined. 15 U.S.C. § 1241(b). ("Federal Knife Ban").

4. In enacting the Federal Knife Ban, Congress used its power to regulate commerce through the Commerce Clause of the U.S. Constitution to limit the sales of so-called switchblades.

5. First, the Federal Switchblade Act, 15 U.S.C. § 1242, prohibits the

1

introduction, manufacture for introduction, transportation, or distribution in interstate commerce any switchblade (as defined), along with fines, imprisonment, or both. Section 1242 provides:

> "Whoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

6.   This first section, 15 U.S.C. § 1242, prohibits the manufacturing, transportation, or distribution into interstate commerce of any switchblade knife, as defined. It further subjects the manufacturer, transporter, or distributor to severe penalties through fines, imprisonment, or both. Section 1242 also prohibits and penalizes anyone ('whoever") that "knowingly introduces" any switchblade knife — by sale, purchase, carry, or possession —over state lines and beyond. *See also* 15 U.S.C. § 1241 (defining "interstate commerce" to mean "commerce between any State, Territory, possession of the United States, or District of Columbia, or any place outside thereof").

Second, the Federal Switchblade Act, 15 U.S.C. § 1243, prohibits the manufacture, sale, or possession of any switchblade knife within specified jurisdictions, and imposes the *same* harsh penalties — a fine, imprisonment, or both. Section 1243 provides:

> "Whoever, within any Territory or possession of the United States, within Indian country (as defined in section 1151 of title 18), or within the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18), manufactures, sells, or possesses any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both."

7.   This second section, 15 U.S.C. § 1243, prohibits the manufacture, sale, or possession of any switchblade knife, as defined, on Native American reservations, U.S. territories (*e.g.*, Puerto Rico, Guam), and defined maritime and territorial

jurisdictions of the U.S. (*e.g.*, Navy vessels, government-owned aircraft).

8. Furthermore, the Federal Switchblade Act, 15 U.S.C. § 1244, contains extremely narrow exceptions where the prohibitions in sections 1242 and 1243 do not apply. The exceptions are quintessential examples of narrow, arbitrary, and largely inapplicable exceptions that do not apply to the lion's-share of law-abiding citizens throughout the United States.

9. Defendants' enforcement of the Federal Knife Ban unconstitutionally infringes on the fundamental rights individuals who reside in Texas and other States within the U.S. to keep and bear common, constitutionally protected arms — including automatic opening knives or switchblades (as defined) through its restriction on interstate commerce.

10. Because the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms for self-defense," the Defendants' enforcement of the Federal Knife Ban must be declared unconstitutional and enjoined. *Bruen*, 142 S. Ct. at 2118.

## PARTIES

11. Plaintiff Knife Rights, Inc. ("Knife Rights") is a section 501(c)(4) member advocacy organization incorporated under the laws of Arizona with a primary place of business in Gilbert, Arizona. Knife Rights serves its members, supporters, and the public through efforts to defend and advance the right to keep and bear bladed arms. Knife Rights has members and supporters in Texas and states throughout the Country. The interests that Knife Rights seeks to protect in this lawsuit are germane to the organization's purposes. Knife Rights sues on behalf of its members, including the Individual Plaintiffs herein. Plaintiff Knife Rights is hereinafter referred to as the "Institutional Plaintiff." The Institutional Plaintiff's

members include peaceable, law-abiding individuals in Texas that wish to exercise their right to bear arms through the acquisition, possession, and carriage of automatically opening knives prohibited under Defendants' enforcement of the Federal Knife Ban.

12.     Plaintiff Russell Gordon Arnold is an adult natural person, a citizen of the United States, and a resident of Mansfield, Texas. Plaintiff Arnold is a peaceable, non-violent individual who is eligible to keep and bear arms under State and federal law. Plaintiff Arnold is also the owner and operator of RGA Auction Services LLC, d.b.a. Firearms Solutions, and wishes and intends to acquire, possess, carry, and offer for sale, and distribute through interstate commerce, automatically opening knives for lawful purposes, including self-defense. Plaintiff Arnold would acquire, possess, carry, and offer for sale, and distribute through interstate commerce, automatically opening knives but for the Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of the Federal Knife Ban. Plaintiff Arnold is a member of Plaintiff Knife Rights, Inc.

13.     Plaintiff Jeffery E. Folloder is an adult natural person, a citizen of the United States, and a resident of Katy, Texas. Plaintiff Folloder is a peaceable, non-violent individual who is eligible to keep and bear arms under State and federal law. Plaintiff Folloder wishes and intends to acquire, possess, carry, and offer for sale, and distribute through interstate commerce, automatically opening knives for lawful purposes, including self-defense. Plaintiff Folloder would acquire, possess, carry, offer for sale, acquire and distribute through interstate commerce such a knife but for the Government's enforcement of the laws, policies, practices, and customs at issue in this case and his reasonable fear of arrest and prosecution for violation of the Federal Knife Ban. Plaintiff Folloder is a member of Plaintiff Knife Rights, Inc.

14. Plaintiffs Arnold, and Folloder are collectively referred to as the "Individual Plaintiffs."

15. Retailer Plaintiff RGA Auction Services LLC is a Texas business, doing business as "Firearms Solutions," and is a state and federally licensed firearms retailer, and knife retailer, in Mansfield, Texas. Plaintiff Firearms Solutions brings this action on behalf of its customers and would-be customers who wish to purchase, possess, and carry automatically opening knives across state lines, but such customers are prohibited for doing so under Defendants' enforcement of the Federal Knife Ban. Plaintiff Firearms Solutions would sell, and introduce into interstate commerce, automatically opening knives to its customers but for the Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and the reasonable fear of arrest, prosecution, and other penalties, including and not limited to fines, imprisonment, loss of property, and the loss of the license to sell firearms for violation of laws prohibiting the introduction, or manufacture for introduction, into interstate commerce, or transportation or distribution in interstate commerce, any automatically opening knives proscribed under the Federal Knife Ban. Plaintiff Firearms Solutions is a member of Plaintiff Knife Rights, Inc.

16. Retailer Plaintiff MOD Specialties is a Texas business, doing business as "MOD Specialties," and is a state and federally licensed firearms retailer, and knife retailer, in Katy, Texas. Plaintiff MOD Specialties brings this action on behalf of its customers and would-be customers who wish to purchase, possess, and carry automatically opening knives across state lines, but such customers are prohibited for doing so under Defendants' enforcement of the Federal Knife Ban. Plaintiff MOD Specialties would sell, and introduce into interstate commerce, automatically opening knives to its customers but for the Defendants' enforcement of the laws, policies, practices, and customs at issue in this case and the reasonable fear of arrest,

prosecution, and other penalties, including and not limited to fines, imprisonment, loss of property, and the loss of the license to sell firearms for violation of laws prohibiting the introduction, or manufacture for introduction, into interstate commerce, or transportation or distribution in interstate commerce, any automatically opening knives proscribed under the Federal Knife Ban. Plaintiff MOD Specialties is a member of Plaintiff Knife Rights, Inc.

17. Defendant Merrick B. Garland is the United States Attorney General. As Attorney General, Defendant Garland is the head of the U.S. Department of Justice (DOJ). Defendant Garland is sued in his official capacity. Plaintiffs are informed and believe, and on that ground allege, that Defendant is responsible for the enforcement of the Federal Knife Ban.

18. Defendant United States Department of Justice is a federal agency located at 950 Pennsylvania Avenue, NW, Washington, D.C. 20530.

## JURISDICTION AND VENUE

19. Venue lies in this Court under 28 U.S.C. § 1391, as this is an action against officers and agencies of the United States, a plaintiff resides in this judicial district, no real property is involved in this action, and the events giving rise to Plaintiffs' claims arose or exist in this District in which the action is brought.

20. Title 28 U.S.C. § 1331 supplies the Court with original federal question jurisdiction over this action because the action arises under the U.S. Constitution and laws of the United States.

## STATEMENT OF FACTS

21. Federal law defines a "switchblade knife" to mean any knife having a blade which opens automatically— (1) by hand pressure applied to a button or other device in the handle of the knife, or (2) by operation of inertia, gravity, or both. *See*

6

15 U.S.C. 1241(b). The term "interstate commerce" means "commerce between any State, Territory, possession of the United States, or the District of Columbia, and any place outside thereof." 15 U.S.C. § 1241(a).

22. Under the challenged statutes, "[w]hoever knowingly introduces, or manufactures for introduction, into interstate commerce, or transports or distributes in interstate commerce, any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both." 15 U.S.C. § 1242.[1]

23. Furthermore, "[w]hoever, within any Territory or possession of the United States, within Indian country (as defined in section 1151 of title 18), or within the special maritime and territorial jurisdiction of the United States (as defined in section 7 of title 18), manufactures, sells, or possesses any switchblade knife, shall be fined not more than $2,000 or imprisoned not more than five years, or both." 15 U.S.C. § 1243.

24. The Federal Knife Ban has limited exceptions. The ban does not apply to:

> (1) any *common carrier or contract carrier*, with respect to any switchblade knife shipped, transported, or delivered for shipment in interstate commerce in the ordinary course of business;
>
> (2) the manufacture, sale, transportation, distribution, possession, or introduction into interstate commerce, of switchblade knives pursuant to *contract with the Armed Forces*;
>
> (3) the *Armed Forces or any member or employee thereof* acting in the performance of his duty;
>
> (4) the possession, and transportation upon his person, of any switchblade knife with a blade three inches or less in length *by any*

---

[1] To be clear, Plaintiffs do not challenge the Federal Knife Ban restrictions regarding importation of "switchblade" knives into the United States. *See* 15 U.S.C. 1241; Code of Federal Regulations Title 19, Ch. 1, Part 12, sections 12.95-12.103.

*individual who has only one arm*; or

(5) a knife that contains a spring, detent, or other mechanism designed to create a bias toward closure of the blade and that requires exertion applied to the blade by hand, wrist, or arm to overcome the bias toward closure to assist in opening the knife.

See 15 U.S.C. § 1244(1)-(5).

25. Thus, the Federal Knife Ban unconstitutionally infringes on the fundamental right of buying, selling, trading, possessing, or carry of any switchblade knife, as defined, between any of the 50 states, Washington D.C., and any of the U.S. territories despite that automatically opening knives are common arms protected by the Second Amendment.

26. Automatically opening knives are "arms" under the plain text of the Second Amendment. Moreover, Plaintiffs' desire to keep and bear these arms for self-defense and other lawful purposes. This conduct is covered by the plain text of the Second Amendment. As such, the Second Amendment presumptively protects the arms proscribed under the Federal Knife Ban and the Plaintiffs' intended conduct. *See Bruen*, 142 S. Ct. at 2126.

27. To justify an arms regulation, "the government must demonstrate that the regulation is consistent with the Nation's historical tradition of [arms] regulation." *Id.* at 2126, 2130.

28. Automatically opening knives were first produced in the 1700s. *See* RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30 (2001); *see also* TIM ZINSER ET. AL., SWITCHBLADES OF ITALY 7-8 (2003).

29. By the mid-nineteenth century, factory production of automatically opening knives made them affordable to everyday customers. *See* RICHARD V. LANGSTON, THE COLLECTOR'S GUIDE TO SWITCHBLADE KNIVES 30, at 7 (2001).

30. Indeed, on Plaintiffs' information and belief, millions of automatically

8

opening knives have been in common use for decades and longer.

31.     Automatically opening knives are also common jurisdictionally. As of January 2023, at least 45 states allow the possession of automatically opening knives; and at least 36 states permit the public carry of said knives in some manner.

32.     The automatically opening knives prohibited under the Defendants' enforcement of the Federal Knife Ban are like other constitutionally protected knives that do not have the blade fixed in place in all relevant respects: They have a blade, a handle or grip, and the blade rests within the handle or grip of the knife when closed or collapsed, and when open or extended is "fixed" into a usable position (likewise through friction, geometry, or mechanical design) and may be used in the same manner as any other common knife.

33.     Automatically opening knives "are particularly easy to open with one hand." *See*, *e.g.*, David Kopel, Clayton Cramer, and Joseph Edward Olson, *Knives and the Second Amendment*, UNIVERSITY OF MICHIGAN JOURNAL OF LAW REFORM, vol. 47, at 175 (Fall 2013). However, since a folding knife *of any kind* is only functional when fully opened, the argument that one method of opening a knife with one hand somehow increases the dangerousness to the public of a folding knife compared to the myriad of other methods of opening a knife with one hand is ludicrous. Whether a folding knife is opened manually or automatically, it is only useful, for any purpose, once it is fully opened.  Thus, "Prohibitions on carrying knives in general, or of particular knives, are unconstitutional. For example, bans of knives that open in a convenient way (*e.g.*, switchblades, gravity knives, and butterfly knives) are unconstitutional." *Id*. at 167.

34.     In simple terms, an automatically opening knife is merely a folding pocket knife, an arm that is present in millions of households in this Country. According to estimates from American Knife & Tool Institute, as many as

35,695,000 U.S. households own an outdoor or pocket knife. Moreover, assisted-opening and one-hand-opening knives — which are functionally identical to automatically opening knives — are approximately 80% of all knives sold in the United States.

35. Defendants' enforcement of the Federal Knife Ban denies individuals who reside in the United States, including the named Individual Plaintiffs and the Institutional Plaintiff's members, their fundamental, individual right to keep and bear these common, constitutionally protected arms for lawful purposes, including self-defense.

36. The Federal Knife Ban has no historical pedigree nor justification in the Nation's history and tradition of arms regulation. Indeed, the Federal Knife Ban dates only to 1958.

37. Automatically opening knives, including those prohibited under the Federal Knife Ban, are in common use for lawful purposes throughout the vast majority of the United States. Because automatically opening knives, including those prohibited under the Federal Knife Ban, are possessed by peaceable people, they are not (and could not be) *both* "dangerous *and* unusual" arms.

38. There is no constitutionally relevant difference between knives the that may be acquired, possessed, carried, sold, and distributed through interstate commerce throughout the United States and those prohibited under the Federal Knife Ban.

# **CLAIM FOR RELIEF**

## **COUNT I**
## **DEPRIVATION OF CIVIL RIGHTS**
## **RIGHT TO KEEP AND BEAR ARMS**
## **U.S. CONST., AMEND. II**
## **(28 U.S.C. § 1331)**

39. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

40. There is an actual and present controversy between the parties.

41. The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

42. In *Heller*, 554 U.S. 570 (2008), the Supreme Court declared unconstitutional the District of Columbia's laws that, among other things, prevented Mr. Heller from having a handgun "operable for the purpose of immediate self-defense." 554 U.S. 570 at 635. The word "immediate" means, as is relevant here, "occurring, acting, or accomplished without loss or interval of time," i.e. "instant," "existing without intervening space or substance," and "acting or being without the intervention of another object, cause, or agency." *See*, *e.g.*, *Immediate*, Merriam Webster Dictionary, https://www.merriam-webster.com/dictionary/immediate.

43. The Supreme Court "already recognized in *Heller* at least one way in which the Second Amendment's historically fixed meaning applies to new circumstances. The Second Amendment's reference to arms does not apply only to those arms in existence in the 18th century." *Bruen*, 142 S. Ct. at 2132 (quoting *Heller*, 554 U.S. at 582).

11

44. "Just as the First Amendment protects modern forms of communications, and the Fourth Amendment applies to modern forms of search, the Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding." *Id*. "Thus, even though the Second Amendment's definition of arms is fixed according to its historical understanding, that general definition covers modern instruments that facilitate armed self-defense. *Cf. Caetano v. Massachusetts*, 577 U. S. 411, 411-412 (2016) (per curiam) (stun guns)." *Id*.

45. In *Caetano*, Justice Alito issued a concurring opinion, joined by Justice Thomas, explaining that, in determining whether an arm is protected under the Second Amendment, "the pertinent Second Amendment inquiry is whether stun guns are commonly possessed by law-abiding citizens for lawful purposes today." *Id.* at 420. Indeed, the Massachusetts Supreme Judicial Court "offered only a cursory discussion of that question, noting that the 'number of Tasers and stun guns is dwarfed by the number of firearms." *Id.* (quoting *Com. v. Caetano*, 470 Mass. 774, 781 (2015). "This observation may be true, but it is beside the point. Otherwise, a State would be free to ban all weapons except handguns, because handguns are the most popular weapon chosen by Americans for self-defense in the home." 577 U.S. 411 at 420 (quoting *Heller*, 554 U.S. at 629) (cleaned up).

46. As Justice Alito further explained, "[t]he more relevant statistic is that hundreds of thousands of Tasers and stun guns have been sold to private citizens, who it appears may lawfully possess them in 45 States." *Id*. (quoting *People v. Yanna*, 297 Mich. App. 137, 144 (2012) (holding Michigan stun gun ban unconstitutional) (cleaned up).

47. In *Bruen*, the Court reaffirmed principles it clearly applied in *Heller*. *Bruen* also reiterated, among other things, that "the Second Amendment extends,

prima facie, to *all* instruments that constitute bearable arms." *Id*. at 2132 (emphasis added).

48. There can be no dispute over the proper approach to evaluating Second Amendment claims. First, the Court must determine whether "the Second Amendment's plain text covers an individual's conduct" that is being restricted by a challenged law or policy. *Bruen*, 142 S. Ct. at 2129-30. Second, if the answer is yes, the conduct is presumptively protected, and the burden then falls to the government to justify the challenged restriction by "demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. If the government cannot make this demonstration, the restriction is unconstitutional, full stop. No interest-balancing or levels-of-scrutiny analysis can or should be conducted. *Id*. at 2127.

49. Automatically opening knives — including those proscribed under the Federal Knife Ban — are widely possessed and used for lawful purposes across much of the Country.

50. *Bruen* confirms that the Second Amendment's plain text covers the arms (knives) and conduct Plaintiffs wish to engage in (keep and bear arms). *Bruen* also confirmed that *Heller* already conducted the relevant historical analysis for determining whether a particular arm falls within the Second Amendment's protection. In order for a ban of an arm to be consistent with this Nation's history of firearm regulation, the government must demonstrate that the banned arm is both "dangerous and unusual." *Id*. at 2143. Arms that are in "common use today" simply cannot be banned. *Id*.

51. When an arm is possessed and used by thousands for lawful purposes, it is "in common use" and it is protected — full stop. If an arm is in common use, it necessarily cannot be *both* "dangerous and unusual." And moreover, even arms not

"in common use" cannot be banned so long as they are no more dangerous than other arms that are in common use.

52. Even if the numerical quantity of any arm is difficult to establish, an arm being in common use can be proved by categorical and jurisdictional commonality. If an arm is categorically analogous or similar enough to a protected arm and that it is lawful for them to be sold to private citizens in the majority of states, then the arm is common. As such, it cannot be both "dangerous and unusual" if it is lawful to possess and use in a majority of the Country.

53. Common use operates in one direction: An arm that is initially uncommon can become common over time, but an arm that is common cannot become uncommon.

54. Defendants' enforcement of the Federal Knife Ban prohibits constitutionally protected arms and conduct, and thus violates the Second Amendment to the United States Constitution.

55. "The constitutional right to bear arms in public for self-defense is not a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees." *Bruen*, 142 S. Ct. at 2156 (quoting *McDonald*, 561 U. S., at 780 [plurality opinion]).

56. "The very enumeration of the [Second Amendment] right takes out of the hands of government"— including Defendants — "the power to decide on a case-by-case basis whether the right is *really worth* insisting upon." *Heller*, 554 U.S. at 635 (emphasis in original).

57. Plaintiffs Arnold and Folloder desire and intend to exercise their right to keep and bear arms through the acquisition, possession, carrying, and offering for sale, and distribution through interstate commerce, automatically opening knives for

lawful purposes, including self-defense and would do so, but for the Defendants' enforcement of the Federal Knife Ban.

58. Retailer Plaintiffs Firearms Solutions and MOD Specialties desire and intend to acquire and sell, via interstate commerce, automatically opening knives to their customers for lawful purposes, and would, but for Defendants' enforcement of the Federal Knife Ban. Like the Individual Plaintiffs and the Retailer Plaintiffs, the Institutional Plaintiff's individual members and retailer members' customers desire and intend to exercise their right to keep and bear an automatically opening knife for lawful purposes, and would, but for the Defendants' enforcement of the Federal Knife Ban.

59. Plaintiff Knife Rights' Texas members desire and intend to exercise their right to keep and bear automatically opening knives for lawful purposes including self-defense, and would do so, but for Defendants' enforcement of the Federal Knife Ban.

60. Defendants have been and are actively enforcing the Federal Knife Ban against the Plaintiffs and similarly situated individuals and retailers. Plaintiffs reasonably fear that the Defendants will continue to enforce the Federal Knife Ban against them.

61. By enforcing the Federal Knife Ban against the Individual Plaintiffs, Retailer Plaintiffs, and Institutional Plaintiff's members, Defendants have violated the Plaintiffs' rights protected under the Second Amendment.

62. The Defendants' enforcement of the laws, policies, practices, and customs at issue in this case against Plaintiffs and other similarly situated members of the public cause injury and damage actionable under federal law. *See* 28 U.S.C. §1331. Plaintiffs thus seek declaratory and injunctive relief and the recovery of

attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

1. A declaratory judgment that the relevant provisions of Federal Knife Ban and Defendants' enforcement of the Federal Knife Ban violates the right to keep and bear arms protected under the Second Amendment to the U.S. Constitution;

2. Preliminary and permanent injunctive relief restraining the Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing the Federal Knife Ban;

3. All other and further legal and equitable relief, including injunctive relief, against Defendants as necessary to effectuate the Court's judgment, and/or as the Court otherwise deems just and equitable; and,

4. Attorney's fees and costs pursuant to 42 U.S.C. §§ 1988, 2000b-1, and any other applicable law.

Respectfully submitted this 1st day of June 2023.

/s/ *R. Brent Cooper*
R. Brent Cooper
TX Bar No. 04783250
brent.cooper@cooperscully.com
Benjamin Passey
TX Bar No. 24125681
ben.passey@cooperscully.com

COOPER & SCULLY PC
900 Jackson, Suite 100
Dallas, TX 75202
Phone: (214) 712-9500

John W. Dillon\*
CA Bar No. 296788
jdillon@dillonlawgp.com
DILLON LAW GROUP APC
2647 Gateway Road, Suite 105, No. 255
Carlsbad, California 92009
Phone: (760) 642-7150

\**Pro Hac Vice* Application Forthcoming

*ATTORNEYS FOR PLAINTIFFS*
