## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| KNIFE RIGHTS INC., *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 4:23-cv-547-O |
| MERRICK GARLAND, *et al.*, | |
| Defendants. | |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
## PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................1

ARGUMENT ..............................................................................................................................1

I.      Plaintiffs Challenge Only Section 1242 of the Federal Switchblade Act ........................1

II.     Plaintiffs Lack Standing.......................................................................................................3

III.    Plaintiffs Fail to State a Claim ............................................................................................8

        A.     Plaintiffs Fail to Show That Section 1242 Prevents Them from Acquiring
              Switchblades ...............................................................................................................8

        B.     The Second Amendment Does Not Protect Switchblades ......................................10

        C.     Section 1242 is Consistent with History and Tradition .................................13

CONCLUSION ..........................................................................................................................14

i

# TABLE OF AUTHORITIES

## CASES

*Angelo v. Dist. of Columbia,*
  648 F. Supp. 3d 116 (D.D.C. 2022) ............................................................................. 4

*Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n,*
  70 F.4th 914 (5th Cir. 2023) ...................................................................................... 6

*California v. Texas,*
  593 U.S.---, 141 S. Ct. 2104 (2021) ............................................................................ 4

*Children's Health Def. v. Food & Drug Admin.,*
  650 F. Supp. 3d 547 (W.D. Tex. 2023), *aff'd*, 2024 WL 244938 (5th Cir. Jan. 23, 2024) ................... 8

*Crane v. Johnson,*
  783 F.3d 244 (5th Cir. 2015) ...................................................................................... 3

*Crowley Cutlery Co. v. United States,*
  849 F.2d 273 (7th Cir. 1988) .................................................................................... 11

*Del. State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.,*
  Civ. A. No. 22-951-RGA, 2023 WL 2655150 (D. Del. Mar. 27, 2023) ................................ 11

*Dist. of Columbia v. Heller,*
  554 U.S. 570 (2008) ..................................................................................... 10, 11, 14

*Fall v. Esso Standard Oil Co.,*
  297 F.2d 411 (5th Cir. 1961) .................................................................................. 11, 12

*Gazzola v. Hochul,*
  88 F.4th 186 (2d Cir. 2023) ...................................................................................... 9

*Hollis v. Lynch,*
  827 F.3d 436 (5th Cir. 2016) .................................................................................... 13

*Jackson v. Gautreaux,*
  3 F.4th 182 (5th Cir. 2021) ........................................................................................ 3

*La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, LLC,*
  82 F.4th 345 (5th Cir. 2023) .................................................................................... 7, 8

*Lozano v. Schubert,*
  41 F.4th 485 (5th Cir. 2022) ...................................................................................... 2

*Lujan v. Defs. of Wildlife,*
  504 U.S. 555 (1992) .......................................................................................... 3, 4, 5, 7

*Miss. State Democratic Party v. Barbour,*
   529 F.3d 538 (5th Cir. 2008) ................................................................................4

*NAACP v. City of Kyle,*
   626 F.3d 233 (5th Cir. 2010) ................................................................................7

*Nat'l Press Photographers Ass'n v. McCraw,*
   ---F.4th---, 2024 WL 105019 (5th Cir. Jan. 10, 2024) ....................................4, 5, 6

*New York State Rifle & Pistol Ass'n v. Bruen,*
   597 U.S. 1 (2022) ......................................................................................11, 14

*Nunn v. State,*
   1 Ga. 243 (1846) ..................................................................................................14

*Oliver v. Mil. Dep't,*
   Civ. A. No. 22-356-SDD-RLB, 2023 WL 2700709 (M.D. La. Mar. 29, 2023) ....................2

*Or. Firearms Fed'n, Inc. v. Brown,*
   644 F. Supp. 3d 782 (D. Or. 2022), *appeal dismissed,*
   2022 WL 18956023 (9th Cir. Dec. 12, 2022) ..........................................................11

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ..............................................................................................3

*Susan B. Anthony List v. Driehaus,*
   573 U.S. 149 (2014) ..............................................................................................4

*Teixeira v. Cnty. of Alameda,*
   873 F.3d 670 (9th Cir. 2017) ........................................................................8, 9, 10

*TransUnion LLC v. Ramirez,*
   594 U.S. 413 (2021) ..............................................................................................8

*United States v. Flores,*
   652 F. Supp. 3d 796 (S.D. Tex. 2023) ..................................................................10

*United States v. Holton,*
   639 F. Supp. 3d 704 (N.D. Tex. 2022) ..................................................................10

*United States v. Rahimi,*
   61 F.4th 443 (5th Cir.), *cert. granted,* 143 S. Ct. 2688 (2023) ..............................11

*United States v. Richardson,*
   418 U.S. 166 (1974) ..............................................................................................8

**FEDERAL STATUTES**

15 U.S.C. § 1242 ..................................................................................................1

15 U.S.C. § 1243........................................................................................................... 1, 6

Federal Switchblade Act,
   Pub. L. No. 111-83, 123 Stat. 2142 (2009) ...........................................................5

**STATE STATUTES**

720 Ill. Comp. Stat. Ann. 5/24-1 (West 2023)......................................................12

Cal. Penal Code § 21510 (West 2023) ...................................................................12

Colo. Rev. Stat. Ann. § 18-12-105 (West 2023) ...................................................13

Conn. Gen. Stat. Ann. § 53-206 (West 2023) ........................................................12

D.C. Code Ann. § 22-4514 (West 2023)................................................................12

Del. Code Ann. tit. 11, § 1446 (West 2023 ...........................................................12

Fla. Stat. Ann. § 790.01 (West 2023) ....................................................................13

Haw. Rev. Stat. Ann. § 134-52 (West 2023) .........................................................12

Mass. Gen. Laws Ann. ch. 269, § 10 (West 2023) ...............................................12

Md. Code Ann., Crim. Law, § 4-101 (West 2023) ................................................12

Minn. Stat. Ann. § 609.66 (West 2023) .................................................................12

Miss. Code. Ann. § 97-37-1 (West 2023) ..............................................................13

N.J. Stat. Ann. § 2C:39-3 (West 2023) ..................................................................12

N.M. Stat. Ann. § 30-7-8 (West 2023) ..................................................................12

N.Y. Penal Law § 265.01 (McKinney 2023)..........................................................12

Or. Rev. Stat. Ann. § 166.240 (West 2023) ...........................................................13

Vt. Stat. Ann. tit. 13, § 4013 (West 2023) .............................................................12

Wash. Rev. Code Ann. § 9.41.250 (West 2023) ....................................................12

**OTHER AUTHORITIES**

Act of Dec. 25, 1837 § 1, 1837 Ga. Acts. 90.........................................................13

Act of Feb. 15, 1839, ch. 168, § 5, 1839 Miss. Laws 384 ....................................14

Balt., Md., Balt. Cnty. Code art. 19, § 59-22 (2022) ............................................13

Ch. 137, 1837-1838 Tenn. Acts 200 ..................................................................................14

Denver, Colo., Code of Ordinances ch. 38, § 117 (2023) ..................................................13

Detroit, Mich., City Code ch. 31, art. 13, § 83 (2023) ......................................................13

Mia., Fla., Code of Ordinances, ch. 21, art. 3, § 14 (2023) ...............................................13

New Orleans, La., Code of Ordinances, ch. 54, art. 6, § 339 (2023) ..................................13

Phila., Pa., Phila. Code § 10-820 (2023) ............................................................................13

S. Comm. on the Judiciary, 85th Cong., Rep. on Juvenile Delinquency (Comm. Print 1957) .............12

## INTRODUCTION

The Federal Switchblade Act has only two provisions that restrict switchblades:  15 U.S.C. §§ 1242 and 1243.  Section 1242 prohibits the interstate sale of switchblades.  Section 1243 prohibits possession of switchblades in certain areas, including U.S. territories and Native American reservations.  Plaintiffs' Complaint challenged only the ban on interstate sales included in Section 1242.  Yet, in their Opposition and Reply, Plaintiffs claim that they meant to challenge Section 1243 as well.  This attempt to amend their Complaint via an Opposition is impermissible.  Any arguments about Section 1243 are not properly before the Court and should be disregarded.

That leaves Section 1242, which Plaintiffs lack standing to challenge.  Plaintiffs cannot show that they are likely to face prosecution:  Section 1242 has not been enforced since 2010, and only four prosecutions in the entire nation have been recorded since 2004.  Even if they had standing, Plaintiffs fail to state a claim.  Plaintiffs have not shown that the statute interferes with their ability to acquire a switchblade from vendors available in their own states.  In any event, the Second Amendment excludes arms that are not typically used for lawful purposes like self-defense, and automatic switchblades fall under that category.  And even if the Second Amendment were implicated, Section 1242 falls within the historical tradition of regulating bladed weapons and the commercial sale of arms.  Section 1242 is constitutional, and Defendants' Motion to Dismiss should be granted.

## ARGUMENT

### I.     Plaintiffs Challenge Only Section 1242 of the Federal Switchblade Act

As an initial matter, this case is limited to Section 1242 because the Complaint itself only alleged facts concerning the interstate sales ban.  Nothing in the allegations of the Complaint suggests that any of the Plaintiffs sought to possess switchblades on federal or tribal land, as they now contend.  Plaintiffs merely described Section 1243's territorial restrictions in the introductory

section and in a paragraph of the Statement of Facts.  Compl. ¶¶ 6-7, 23.  That description is no different than the Complaint's descriptions of Section 1241, which provides relevant definitions, or of Section 1244, which provides exceptions to the statute.  Compl. ¶¶ 6, 8, 24.  What was missing was any sort of factual allegation about how Section 1243 applied to the Plaintiffs.

Such allegations were likewise missing from the Plaintiffs' Motion for Summary Judgment. Plaintiffs referenced their desire to "possess" switchblades, but those references were repeatedly connected to their challenge to Section 1242's interstate commerce ban.  *See, e.g.,* Pls.' Knife Rights, Inc., et al., Notice of Mot. & Mot. for Summ. J. at 10, ECF No. 20 ("Mot. for Summ. J.") (stating that Plaintiffs seek "the ability to freely manufacture for sale, sell, distribute, transport, purchase, possess, and carry bladed arms in common use *through interstate commerce*" (emphasis added)); *see also id.* at 13.

It was only in Plaintiffs' Opposition and Reply that they added contentions regarding Section 1243, by asserting that several Plaintiffs wish to take switchblades with them while traveling through federal and tribal land.  *See, e.g.,* Suppl. Decl. of Pl. Jeffrey E. Folloder ¶¶ 7-8, ECF No. 28-1 ("Suppl. Folloder Decl.").  Plaintiffs cannot amend their Complaint with allegations and arguments asserted for the first time in responsive briefing.  *See Oliver v. Mil. Dep't*, Civ. A. No. 22-356-SDD-RLB, 2023 WL 2700709, at *7 & n.65 (M.D. La. Mar. 29, 2023) ("[A]ny arguments or assertions of facts in Plaintiff's *Oppositions* that are not pled in her *Complaints* are not properly before the Court. . . . [I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss." (citation omitted) (collecting cases)).

It is immaterial that Plaintiffs' new allegations and arguments came in briefing that addressed their Summary Judgment Motion as well as Defendants' Motion to Dismiss.  The same prohibition against new allegations applies in the summary judgment context.  *See Lozano v. Schubert*, 41 F.4th 485, 491 n.4 (5th Cir. 2022) (noting that "[t]he district court correctly concluded in its summary

2

judgment order that it could not consider the allegations that [a party] raised for the first time in his response to the defendants' summary judgment motion").  It is also immaterial that Plaintiffs' Complaint and Summary Judgment Motion included a Second Amendment claim against Section 1242.  Neither the Complaint nor the Motion included any argument about Section 1243.  To target a new provision of the law based on new factual allegations is to engage in "precisely the sort of surprise switcheroo that [the Fifth Circuit's] precedents forbid." *Jackson v. Gautreaux*, 3 F.4th 182, 189 (5th Cir. 2021).

Plaintiffs' claims against § 1243 are not properly before the Court.  The only challenge that Plaintiffs have properly brought to the statute is to Section 1242.  In an implicit nod to this prospect, Plaintiffs ask for leave to amend the Complaint if the Court were to disregard the new allegations.  Pls.' Consolidated Opp'n to Defs.' Mot. to Dismiss & Reply in Further Supp. of Pls.' Summ. J. Mot. at 21-22, ECF No. 28 ("Opp'n").  That request should be denied.  As described below, Plaintiffs fail to establish standing and fail to state a claim even if their challenge to Section 1243 is considered.

## II.    Plaintiffs Lack Standing

As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing that they have standing. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  They must accordingly show that they "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Plaintiffs' burden is "especially rigorous" given that they request the constitutional invalidation of a federal statute. *Crane v. Johnson*, 783 F.3d 244, 251 (5th Cir. 2015).  Plaintiffs fail to meet that burden, since they fail to show that they have suffered the kind of injury that is necessary to pursue a pre-enforcement challenge.  To establish such an injury, Plaintiffs must show (1) "an intention to engage in a course of conduct arguably affected with a constitutional

interest, but proscribed by a statute," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (citation omitted), and (2) "that the likelihood of future enforcement is substantial." *California v. Texas*, 593 U.S.---, 141 S. Ct. 2104, 2114 (2021) (citation omitted).  They fail to make such a showing here.

To start, Plaintiffs have not adequately demonstrated that they intend to violate Section 1242.  They have failed to provide "concrete plans or any objective evidence to demonstrate a 'serious interest'" in acting contrary to law, and thus there is "no threat of *imminent* injury." *Miss. State Democratic Party v. Barbour*, 529 F.3d 538, 546 (5th Cir. 2008) (quoting *Lujan*, 504 U.S. at 560). Instead, the individual Plaintiffs assert that they are "ready, willing, and able to purchase and sell automatic[ally] opening knives," and allude to their desire to sell switchblades at gun shows and conventions across the country.  Suppl. Folloder Decl. ¶¶ 4, 7;  Suppl. Decl. of Russell Gordon Arnold ¶ 4, ECF No. 28-2.  But a claimed desire to sell switchblades is not the same as a concrete plan to make such sales happen, such as by specifying which knives would be sold, where they would be sold, or when such gun shows and conventions would take place.

Even if Plaintiffs had provided sufficient detail, they would lack standing because they have not shown that they face a substantial likelihood of enforcement regarding Section 1242's interstate commerce ban.  As the Fifth Circuit recently made clear, Plaintiffs' failure to show "any imminent or even credible threat of prosecution" under a statute is fatal to their standing to challenge it. *Nat'l Press Photographers Ass'n v. McCraw*, ---F.4th---, 2024 WL 105019, at *5 (5th Cir. Jan. 10, 2024).  That is the case here.  Plaintiffs "have never been arrested or prosecuted for violating" Section 1242. *Id.*. Nor have they identified any "prior threats against them" or "characteristics indicating an especially high probability of enforcement against them." *Angelo v. Dist. of Columbia*, 648 F. Supp. 3d 116, 126 (D.D.C. 2022) (citation omitted).  To the contrary, Section 1242 has not been enforced since 2010, and only four prosecutions in the entire nation have been recorded since 2004.  Decl. of Matthew

Zabkiewicz ¶ 5, ECF No. 26-1 ("Zabkiewicz Decl."). The issue of Section 1242's constitutionality under the Second Amendment "is therefore a mere hypothetical dispute lacking the concreteness and imminence required by Article III." *Nat'l Press Photographers Ass'n*, 2024 WL 105019, at *5.

Instead of showing how they are likely to be subject to enforcement, Plaintiffs offer a string of generalized arguments for why they should have standing to challenge Section 1242. These arguments are unavailing. Plaintiffs first argue that there may have been "arrests, charges, prosecutions, pleas, and/or convictions under the various provisions of the FSA" that Defendants did not capture in their data. Opp'n at 16. That contention is without substance. More fundamentally, this line of argument is flawed because it is Plaintiffs' burden to establish standing. *Lujan*, 504 U.S. at 561. They do not meet that burden by alluding to the absence of enforcement data. The same reasoning applies to a similar argument offered by Plaintiffs: that they have standing because there has been no official commitment from the Department of Justice assuring that they will not be prosecuted under the statute. If that were the standard, then anyone could have standing to challenge any criminal law that they said they would violate, so long as prosecutors did not personally tell them that they would be safe from enforcement. That is not the law. Plaintiffs bear the burden of establishing standing, and they cannot shift it onto the government.

Plaintiffs also argue that a 2009 amendment to the Federal Switchblade Act shows that it is still relevant and may be enforced in the future. But that amendment is immaterial to Plaintiffs' standing. The amendment added an additional exception to its enforcement: that knives with "a spring, detent, or other mechanism designed to create a bias toward closure" would not be encompassed by the statute. Federal Switchblade Act, Pub. L. No. 111-83, title V, § 562, 123 Stat. 2142, 2183 (2009). A congressional amendment from fifteen years ago that limited the statute's enforcement power does not make it substantially likely that these Plaintiffs will face enforcement. And even if the entire statute had been *enacted* in 2009, it would make no difference. In *National Press*

*Photographers Ass'n*, the Fifth Circuit held that the plaintiffs lacked standing to launch a pre-enforcement challenge against a statute that had been enacted by the Texas Legislature in 2013. 2024 WL 105019, at *1 & n.1.  Recent legislative activity does not demonstrate imminent enforcement activity.

Plaintiffs' arguments boil down to a general fear of prosecution under Section 1242.  But "a general fear of prosecution cannot substitute for the presence of an imminent, non-speculative irreparable injury."  *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 926 (5th Cir. 2023) (citation omitted).  Nor is the general fear of prosecution transformed into an injury because Plaintiffs comply with the law.  *See Nat'l Press Photographers Ass'n*, 2024 WL 105019, at *5-6 (finding no standing under the Due Process Clause even though plaintiffs alleged that they had restricted their activities in response to the statute).  If it were otherwise, then the requirement that a party face a substantial likelihood of enforcement would be no requirement at all.  The only thing a person would have to do to have standing to challenge a law they disliked would be to say that they were injured because they were comporting with that law.

The same obstacle to standing to challenge Section 1242 presents itself with even greater force regarding any challenge to Section 1243.  Section 1243 has not been enforced since at least 2004, the farthest back that systematic data is available.  *See* Zabkiewicz Decl. ¶ 5.  Plaintiffs plainly lack standing when they fail to provide evidence that the statutory provision has ever been enforced against them or others.  *Nat'l Press Photographers Ass'n*, 2024 WL 105019, at *5.

Plaintiffs' newfound allegations are also entirely devoid of detail about their plans that would supposedly implicate Section 1243.  Individual plaintiffs assert that they "traverse through federal land and Indian country," Suppl. Folloder Decl. ¶ 8, but they do not identify which federal or tribal lands they would be visiting, when those visits might occur, or whether the federal lands would fall within the special maritime and territorial jurisdiction of the United States.  *See* 15 U.S.C. § 1243.

6

"Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury" that is required to establish standing. *Lujan*, 504 U.S. at 564 (citation omitted). And Plaintiffs fail to allege anything about how they would be affected by Section 1243's restrictions on possessing switchblades in U.S. territories, despite appearing to now challenge the provision in its entirety. So even if Plaintiffs could bootstrap their challenge to Section 1243 to their challenge to Section 1242, they would lack standing on both fronts.

Nor do Plaintiffs have standing to challenge either provision under a theory advanced in their Opposition and Reply: that Knife Rights is injured as an organization by the Federal Switchblade Act because it has expended time and money advocating against the statute and educating its members about it. An organization only has standing under such a theory if it can show that its "ability to pursue its mission is perceptibly impaired because it has diverted significant resources to counteract the defendant's conduct." *La. Fair Hous. Action Ctr., Inc. v. Azalea Garden Properties, LLC*, 82 F.4th 345, 351 (5th Cir. 2023) (citation omitted). Knife Rights fails on all levels. For one, the organization is not directly regulated by the Federal Switchblade Act and thus would not be "injured if it d[id] nothing" in response to the law. *Id.* at 357 (Ho, J., concurring) (emphasis omitted). Its assertion that it "chose to expend resources to counteract" the statute is insufficient, since "the mere voluntary diversion of resources" is not a "bona fide harm." *Id.* at 357 (Ho, J., concurring) (emphasis omitted). Moreover, Knife Rights has not shown that its advocacy against the Federal Switchblade Act has perceptibly impaired its mission. Indeed, knife-related advocacy *is* its mission. *See* Compl. ¶ 11. Nor has it identified any specific initiatives or actions that it has paused or changed due to its opposition to the statute. *See NAACP v. City of Kyle*, 626 F.3d 233, 238 (5th Cir. 2010). It has instead simply provided "conclusory allegations" that its "diversion of resources

'impaired or impeded' some planned projects," which is insufficient to establish organizational standing.[1]  *La. Fair Hous. Action Ctr.*, 82 F.4th at 355.

Of course, this does not mean that Plaintiffs have no recourse in challenging a law that they believe is unwise and unconstitutional.  They can do exactly what they have done at the state level in Texas:  persuade Congress to change the law.  Failing that, they can persuade their fellow Americans to elect a Congress that would make that change.  *See United States v. Richardson*, 418 U.S. 166, 179 (1974) ("Lack of standing within the narrow confines of Art. III jurisdiction does not impair the right to assert [a party's] views in the political forum or at the polls.").  But "[f]ederal courts do not possess a roving commission to publicly opine on every legal question."  *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).  Plaintiffs lack standing, and the Court lacks jurisdiction to hear the case.

## III.    Plaintiffs Fail to State a Claim

Even if Plaintiffs had standing, they would nevertheless fail to state a claim for at least three reasons:  (1) they have not shown that Section 1242 interferes with their ability to acquire a switchblade, (2) they have not shown that the text of the Second Amendment applies to switchblades, and (3) the nation's history and tradition demonstrates that Section 1242 is permissible even if the Second Amendment were applicable.

### A.    Plaintiffs Fail to Show That Section 1242 Prevents Them from Acquiring Switchblades

To state a claim under the Second Amendment, Plaintiffs must show that Section 1242 interferes with their ability to acquire a switchblade.  *See Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 680-81 (9th Cir. 2017).  Plaintiffs fail to do so.  The Complaint does not allege facts that

---

[1] Knife Rights also lacks associational standing, since Plaintiffs have not shown that any of its members would have standing on their own.  *See Children's Health Def. v. Food & Drug Admin.*, 650 F. Supp. 3d 547, 556 (W.D. Tex. 2023) (holding that where "the only identified members" of plaintiff group could not show standing, the group "lack[ed] associational standing"), *aff'd*, 2024 WL 244938 (5th Cir. Jan. 23, 2024).

demonstrate that any of the Plaintiffs are prevented from acquiring a switchblade under Section 1242. Such allegations are missing for a reason: Section 1242 simply prohibits the interstate sale of switchblades; it has no impact on Plaintiffs' ability to acquire a switchblade in any of the states in which they are legal. Nor does the provision affect anyone's ability to lawfully acquire switchblades in the states in which they are banned. To the extent that Plaintiffs wish to extend access to switchblades in those states, their issue is with the state laws, not with Section 1242.

The most specific factual allegation that the Plaintiffs provide comes in two declarations submitted with their Opposition and Reply, stating that two individuals tried to purchase switchblades from Knifecenter.com in December 2023 but could not do so because the blades were from outside their home states. Decl. of Adam Kaufmann ¶ 9, ECF No. 28-5; Decl. of Adam Warden ¶ 7, ECF No. 28-4. Neither of the two individuals are parties to this case, nor are these allegations included in the Complaint. *Teixeira*, 873 F.3d at 680 n.13 (rejecting allegations that had not been included in a complaint). But even if the Complaint included these allegations, it would be immaterial. These individuals have not alleged that they cannot buy a switchblade in their states. They are instead claiming that they cannot buy a switchblade from a website based in another state. Regardless of whether the Second Amendment confers a right to acquire switchblades, it certainly does not encompass the right to acquire switchblades *from a particular seller*. *See id.* at 679-80 & n.13; *see also Gazzola v. Hochul*, 88 F.4th 186, 197-98 (2d Cir. 2023).

Plaintiffs also argue that Section 1242 affects sales within their respective states because retailers are blocked from buying switchblades in other states. That argument rests on the assumption that the only way that sellers can acquire switchblades to sell to customers within their states is to buy them from sellers in other states. That assumption is contradicted by facts alleged in the Complaint and by evidence supplied in Plaintiffs' Motion for Summary Judgment. *See* Compl. ¶ 49 (alleging that switchblades "are widely possessed and used for lawful purposes across much of

the Country"); Mot. for Summ. J. Ex. S, App. 000573, ECF No. 20-3 (stating that switchblades make up approximately 80 percent of the knives marketed in the United States). Switchblades could not be lawfully sold or possessed throughout the country if sellers could not lawfully acquire them. The obvious conclusion is that sellers lawfully acquire switchblades in the same way that people throughout the United States lawfully acquire them: by building them on their own, or by purchasing them from sellers in their own states.[2]

To be sure, there may be closer cases where a statute materially impairs people's ability to acquire a weapon without technically banning it. *See Teixeira*, 873 F.3d at 680. But this is not such a case. Section 1242 places no restriction on intrastate sale: the vendors that Plaintiffs can buy switchblades from are those that are closest to them. And Plaintiffs have not alleged that there are switchblade models that are only accessible via interstate sales, or that any discrepancies between the interstate and intrastate markets would be meaningful. *See United States v. Holton*, 639 F. Supp. 3d 704, 711 (N.D. Tex. 2022) (holding that the interstate ban on guns without a serial number did not infringe upon people's ability to acquire a gun, since they could still acquire those with a serial number). Plaintiffs have thereby failed to state a claim because they have failed to show that Section 1242 interferes with their ability to acquire a switchblade.

**B.      The Second Amendment Does Not Protect Switchblades**

Even if Plaintiffs could demonstrate that their ability to acquire switchblades was impinged by Section 1242, it would make no difference. The Second Amendment does not apply to switchblades because they are not "typically possessed by law-abiding citizens for lawful purposes," like other "dangerous and unusual" weapons. *Dist. of Columbia v. Heller*, 554 U.S. 570, 625, 627

---

[2] Plaintiffs additionally point to sellers who claim that they are injured financially by not being able to sell switchblades to customers in other states. *See* Suppl. Folloder Decl. ¶ 6. But neither corporations nor individual sellers possess a Second Amendment right to sell arms. *See Teixeira*, 873 F.3d at 678; *see also United States v. Flores*, 652 F. Supp. 3d 796, 802 (S.D. Tex. 2023) (relying on *Teixeira* to conclude that the Second Amendment does not confer a right to sell arms).

(2008) (citation omitted).  The Supreme Court has already undertaken the analysis needed to

determine that "dangerous and unusual weapons" are not protected by the Second Amendment.

*New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 47 (2022) (quoting *Heller*, 554 U.S. at 627).

The only question then is not whether the history of a particular weapon shows that it is dangerous

and unusual; it is whether the weapon is in common use *today* for self-defense.  *See id.* at 32

(confirming that weapons at issue were "in common use today for self-defense" before further

analyzing text or history) (citation omitted); *United States v. Rahimi*, 61 F.4th 443, 454 (5th Cir.)

(addressing whether a weapon was dangerous and unusual before further analyzing text and history),

*cert. granted*, 143 S. Ct. 2688 (2023).  The burden to demonstrate that lies with the plaintiffs.  *See Del.*

*State Sportsmen's Ass'n v. Del. Dep't of Safety & Homeland Sec.*, Civ. A. No. 22-951-RGA, 2023 WL

2655150, at *3 (D. Del. Mar. 27, 2023); *Or. Firearms Fed'n, Inc. v. Brown*, 644 F. Supp. 3d 782, 802 (D.

Or. 2022), *appeal dismissed*, 2022 WL 18956023 (9th Cir. Dec. 12, 2022).  Plaintiffs fail to meet this

burden.

Switchblades are dangerous weapons that are not typically possessed by law-abiding citizens

for lawful purposes.  Their dangerousness reflects their suitability for crime, as the Fifth Circuit has

already recognized.  *See Fall v. Esso Standard Oil Co.*, 297 F.2d 411, 416-17 (5th Cir. 1961).  This is a

matter of common sense:  A switchblade's defining feature is that its blade is concealed up to the

moment it could be used, and an automatic switchblade enables a criminal to threaten serious bodily

injury with the press of a button.  *See Crowley Cutlery Co. v. United States*, 849 F.2d 273, 278 (7th Cir.

1988) ("Switchblade knives are more dangerous than regular knives because they are more readily

concealable and hence more suitable for criminal use.").

Plaintiffs argue that switchblades are no more dangerous than pocketknives and are less

dangerous than guns.  But the question remains whether their objective characteristics and actual

practice support their criminality.  *See Heller*, 554 U.S. at 624-25.  Plaintiffs also argue that

11

Defendants provide only conclusory opinions about switchblades' link with criminal use. But this ignores the evidence that Congress relied upon regarding switchblades' connection to criminality. *See* S. Comm. on the Judiciary, 85th Cong., Rep. on Juvenile Delinquency at 5-6 (Comm. Print 1957) (citing surveys sent to police departments across the United States, which demonstrated that switchblades were frequently used by youth gangs to commit violent crimes).[3] It was based on objective evidence like this that Congress concluded that switchblades were "by design and use, almost exclusively the weapon of the thug and the delinquent." *Fall*, 297 F.2d at 416 (citation omitted).

And Congress is not alone. Six states and the District of Columbia ban switchblades in their entirety, while another two ban them in most circumstances.[4] Another four states ban these knives above a certain length.[5] Maryland bans the sale and concealed carry of automatic opening knives.[6] New Jersey bans their possession without an explainable lawful purpose.[7] Four other states also

---

[3] Plaintiffs repeatedly refer to a statement made by Deputy Attorney General William Rogers during the 1958 hearings on the Federal Switchblade Act. The statement refers to switchblades as "potentially dangerous weapons" if placed "in the hands of criminals," but it also refers to them as serving "useful and even essential purposes" for law-abiding Americans, thus suggesting that Congress "may deem it preferable that they be regulated at the State rather than the federal level." Mot. for Summ. J. Ex. R, App. 000558, ECF No. 20-3. It is no revelation that the Eisenhower administration initially opposed the Federal Switchblade Act. *Id.* Ex. S, App. 000591. But then Congress passed the bill, and President Eisenhower signed it. *Id.* Thus, the statements made by Deputy Attorney General Rogers did not necessarily reflect the administration's views on whether switchblades were dangerous and unusual in 1958. It has no bearing on whether switchblades are dangerous and unusual in 2024.

[4] Del. Code Ann. tit. 11, § 1446 (West 2023); D.C. Code Ann. § 22-4514 (West 2023); Haw. Rev. Stat. Ann. § 134-52 (West 2023); 720 Ill. Comp. Stat. Ann. 5/24-1 (West 2023); Minn. Stat. Ann. § 609.66 (West 2023); N.M. Stat. Ann. § 30-7-8 (West 2023); N.Y. Penal Law § 265.01 (McKinney 2023); Wash. Rev. Code Ann. § 9.41.250 (West 2023).

[5] Cal. Penal Code § 21510 (West 2023) (2 inches); Conn. Gen. Stat. Ann. § 53-206 (West 2023) (ban on carrying switchblade over 1 ½ inches); Mass. Gen. Laws Ann. ch. 269, § 10 (West 2023) (1 ½ inches); Vt. Stat. Ann. tit. 13, § 4013 (West 2023) (3 inches).

[6] Md. Code Ann., Crim. Law, § 4-101 (West 2023); *Id.* at § 4-105.

[7] N.J. Stat. Ann. § 2C:39-3 (West 2023).

prohibit or restrict concealed carry of switchblades or automatic opening knives.[8]  These kinds of restrictions are not limited to the state level.  At least seven major cities ban switchblades.[9]  This array of state and local restrictions on switchblades demonstrates that they are unusual weapons that are not protected under the Second Amendment.  *See Hollis v. Lynch*, 827 F.3d 436, 451 (5th Cir. 2016).

As dangerous and unusual weapons, switchblades are outside of the scope of the Second Amendment.  Plaintiffs thereby fail to state a Second Amendment claim.

### C.    Section 1242 is Consistent with History and Tradition

Even if the Second Amendment applied, Section 1242 would be permissible because it fits within the historical tradition of regulating bladed weapons and the commercial sale of arms.[10]

Defendants' Motion to Dismiss compiles the extensive historical record of regulating bladed weapons.  Plaintiffs attempt to distinguish or discount that history, but such arguments are unavailing.  Plaintiffs' analysis first goes awry with its assessment of an 1837 Georgia law restricting possession of knives.  Act of Dec. 25, 1837 § 1, 1837 Ga. Acts. 90.  That law was not struck down in its entirety, as Plaintiffs contend.  Rather, the Georgia Supreme Court struck down the portion of the statute that prevented open carry, while specifically holding that its restrictions on concealed

---

[8] Colo. Rev. Stat. Ann. § 18-12-105 (West 2023); Fla. Stat. Ann. § 790.01 (West 2023); Miss. Code. Ann. § 97-37-1 (West 2023); Or. Rev. Stat. Ann. § 166.240 (West 2023).

[9] Denver, Colo., Code of Ordinances ch. 38, § 117 (2023); Mia., Fla., Code of Ordinances, ch. 21, art. 3, § 14 (2023); New Orleans, La., Code of Ordinances, ch. 54, art. 6, § 339 (2023); Balt., Md., Balt. Cnty. Code art. 19, § 59-22 (2022); Detroit, Mich., City Code ch. 31, art. 13, § 83 (2023) (ban on possession in public of knives with blades longer than three inches); Phila., Pa., Phila. Code § 10-820 (2023) (ban on possession in public).

[10] Neither party has addressed how the second step of the *Bruen* analysis would apply in the specific circumstances of Section 1243, which involves wholly separate issues such as the relevant history and tradition of arms regulation in U.S. territories.  It is not necessary for the Court to address those issues here, as the allegations regarding Section 1243 are not properly before the Court, the Plaintiffs lack standing even if the allegations were considered, and the Second Amendment does not apply.

carry were constitutional. *Nunn v. State*, 1 Ga. 243, 251 (1846). Such restrictions were part of the tradition of regulating bladed weapons.

That tradition also included an 1838 Mississippi law, which authorized towns to enact regulations regarding bladed weapons. Act of Feb. 15, 1839, ch. 168, § 5, 1839 Miss. Laws 384, 385. Plaintiffs' argument about the law never being administered misses the point: The very existence of the law presupposes the authority to regulate bladed weapons, regardless of whether that authority was ever exercised. An 1838 Tennessee law regulating bladed weapons was thus not an outlier. *See* Ch. 137, 1837-1838 Tenn. Acts 200. It was part of a tradition that included at least two other states, followed by a far larger group shortly after the Civil War.

Plaintiffs similarly attempt to elide the longstanding history of governmental regulation over the commerce of arms. They note that only one law was at the federal level; that some of these laws were the product of racial bias; and that others resulted only in licensing requirements and not total bans. But the point is not that these were good laws or that they were identical to the Federal Switchblade Act. *See Bruen*, 597 U.S. at 30 (requiring a "historical *analogue*, not a historical *twin*"). The point is that they collectively demonstrate the tradition that arms sales could be regulated. The Supreme Court recognized this tradition in *Heller*, when it noted that its opinion did not "cast doubt" on "laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. at 626-27. Section 1242 is exactly that kind of law.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: January 26, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Branch Director

*/s/ Cameron Silverberg*
CAMERON SILVERBERG
(D.C. Bar No. 1780628)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW
Washington, DC 20005
Phone: (202) 353-9265
Fax: (202) 616-8470
Email: Cameron.D.Silverberg@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024, I electronically filed the foregoing document with the Clerk of Court using this Court's CM/ECF system, which will notify all counsel of record of this filing.

<div style="margin-left: 40%;">

*/s/ Cameron Silverberg*
CAMERON SILVERBERG
Trial Attorney
U.S. Department of Justice

</div>